**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re<br><br>NATIONAL REALTY INVESTMENT ADVISORS, LLC, *et al.*,<br><br>Debtors. | No. 24-cv-10144<br><br>**OPINION & ORDER**<br><br>Chapter 11<br>Bankruptcy Case No. 22-14539<br>Adversary Case No. 23-1335 |
| AIRN LIQUIDATION TRUST CO., LLC,<br><br>Plaintiff,<br><br>v.<br><br>MEDIA EFFECTIVE LLC, *et al.*,<br><br>Defendants. | |

**CECCHI, District Judge.**

This matter comes to the Court on appeal from the United States Bankruptcy Court for the District of New Jersey. Before the Court are several preliminary motions, specifically (1) the New Jersey Bureau of Securities' (the "Bureau" or "NJBS") motion for leave to appear as amicus curiae (the "Amicus Motion"), ECF No. 11; (2) appellees Javier Torres ("Torres") and Media Effective LLC's ("Media Effective") (collectively "Appellees"[1]) motion to dismiss appellant AIRN Liquidation Trust Co., LLC's (the "Trust") appeal (the "Motion to Dismiss"), ECF No. 12; (3) the Trust's motion to strike Appellees' response to the Trust's notice of supplemental authority (the "Strike Motion"), ECF No. 24; (4) Appellees' motion for leave to file a sur-reply brief (the "Sur-

---

[1] Torres and Media Effective were the "primary defendants" in the adversary proceeding below. *In re Nat'l Realty Inv. Advisors, LLC*, Adv. Pro. No. 23-1335, 2024 WL 4481067, at *1 (Bankr. D.N.J. Oct. 11, 2024). The Court will therefore refer to them as "Appellees," though the Court notes that there are four additional appellees: Dora Dillman; Javier Torres, Jr.; Natalia Torres; and Paulina Torres. *See* ECF No. 3.

Reply Motion"), ECF No. 28; and (5) the Trust's motion to strike the Sur-Reply Motion (the "Sur-Reply Strike Motion"), ECF No. 29.  The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a) and will decide the pending motions without oral argument.  Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

## I.     <u>BACKGROUND</u>

National Realty Investment Advisors, LLC ("NRIA") and its affiliates, the debtors in this bankruptcy (collectively "Debtors"), allegedly engaged in a years-long real estate Ponzi scheme. *Nat'l Realty*, 2024 WL 4481067, at *1, *3.  Relevant here, Appellees—who provided advertising services to NRIA—"were paid more than $38 million . . . to attract new investors" to NRIA's scheme. *Id.* at *1.  Over time, Debtors "could not pay the guaranteed returns to their investors and regular expenses as they came due," and the scheme fell apart. *Id.*  Debtors then filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. *Id.*  The Bankruptcy Court, Hon. John K. Sherwood, confirmed Debtor's Amended Chapter 11 Plan on August 10, 2023, which created the Trust (appellant here) "as the successor to the Debtors' bankruptcy estates for purposes of liquidating real estate assets and pursuing litigation." *Id.*

On January 26, 2024, the Trust filed a nine-count amended complaint against Appellees and other individuals based upon allegations that Torres (1) "defrauded innocent investors by knowingly promoting NRIA's fraudulent statements in the media" and (2) "deceived NRIA by charging an egregious commission for work largely done by a third-party vendor." *Id.* at *2, *17.  After a five-day preliminary injunction hearing, which the parties later consented to consolidate with a trial on the merits, Judge Sherwood held that the Trust prevailed on many of its claims and awarded the Trust $4,605,112.16 plus pre- and post-judgment interest. *Id.* at *17.  However, Judge Sherwood ruled that "no relief [was] warranted under [Count III,] Plaintiff's aiding and abetting

2

securities fraud claim under New Jersey law," because the Trust "failed to prove that [Appellees] acted as agents to effectuate the purchase and sales of securities." *Id.* at \*15; *see also id.* at \*14 ("In Count III, the Plaintiff alleges that Media Effective and . . . Torres aided and abetted in securities fraud under New Jersey Uniform Securities Law, §§ N.J.S.A. 49:3-47 to -76").

In October 2024, the Trust appealed the bankruptcy court's decision on Count III. ECF No. 1 at 2. Three days before the Trust's appellate brief was due, ECF No. 9, (1) NJBS filed its Amicus Motion, seeking leave to appear as amicus curiae in support of the Trust, *see* ECF No. 11 at 1, and (2) Appellees filed their Motion to Dismiss this appeal, arguing that the Trust lacked prudential standing to appeal Judge Sherwood's decision, *see* ECF No. 12-1 at 1, 4–5. Appellees opposed NJBS's Amicus Motion, ECF No. 15, and NJBS replied, ECF No. 19. In addition, after the Parties briefed the Motion to Dismiss, ECF Nos. 12-1, 16, 20, the Trust filed a notice of supplemental authority in opposition to the Motion to Dismiss, ECF No. 22, flagging Judge Sherwood's decision in *AIRN Liquidation Trust Co. v. Cipolla*, Adv. Pro. No. 24-1097 (Bankr. D.N.J. Jan. 31, 2025). Appellees filed a response to that notice, ECF No. 23, which the Trust then moved to strike, ECF No. 24. Shortly thereafter, Appellees sought leave to file a sur-reply to the Trust's reply brief, arguing that further briefing was necessary because the Trust raised new and misleading arguments in its reply brief. ECF No. 28. The Trust opposed and moved to strike that request, ECF No. 29, and Appellees opposed the Trust's motion to strike their request for leave to file a sur-reply brief, ECF 30.

On March 30, 2026, the Court ordered NJBS to file a proposed amicus brief to allow the Court to evaluate its request for leave under Federal Rule of Bankruptcy Procedure 8017(a)(2). ECF No. 39. On April 16, 2026, NJBS filed its proposed brief. ECF No. 40.

## II.    DISCUSSION

For the reasons stated below, the Court will deny Appellees' Motion to Dismiss the appeal, deny as moot the Trust's Strike Motion, grant NJBS's Amicus Motion, grant Appellee's Sur-Reply Motion, and deny the Trust's Sur-Reply Strike Motion.

### A.    The Motion to Dismiss the Appeal

#### 1.   Applicable Law

"Standing to appeal in a bankruptcy case is limited to 'persons aggrieved' by an order of the bankruptcy court." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004) (quoting *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993)). This requirement "springs from the [unique] nature of bankruptcy litigation," which involves many parties with many interests, but requires swift and "[e]fficient judicial administration." *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995) (citation omitted). To satisfy this prudential standing requirement, a party must show that the "contested [bankruptcy-court] order 'diminishes [its] property, increases [its] burdens, or impairs [its] rights.'" *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 371 (3d Cir. 2022) (explaining that as a prudential standing doctrine, the "person aggrieved" standard is "'more restrictive' than Article III's 'case or controversy' requirement" (citation omitted)).

#### 2.   Analysis

The Court will deny Appellees' Motion to Dismiss the appeal, because the challenged bankruptcy-court decision directly "diminishes [the Trust's] property." *Id.* at 371 (citation omitted). In the challenged decision, Judge Sherwood held that the Trust "failed to prove that Mr. Torres and Media Effective [*i.e.*, Appellees] acted as agents to effectuate the purchase and sales of securities" and therefore "no relief [was] warranted under [Count III,] Plaintiff's aiding and abetting securities fraud claim under New Jersey law." *Nat'l Realty*, 2024 WL 4481067, at *15. In so holding, Judge Sherwood extinguished one of the Trust's legal claims. And because "[t]here

4

can be little doubt that a legal claim is property within the meaning of the Bankruptcy Code," *In re PWS Holding Corp.*, 228 F.3d 224, 238 (3d Cir. 2000), Judge Sherwood's decision clearly "diminishe[d] [the Trust's] property," *Imerys Talc*, 38 F.4th at 371 (citation omitted); *see also In re Atl. Gulf Communities Corp.*, 326 B.R. 294, 299 (Bankr. D. Del. 2005) ("Under bankruptcy law, even speculative litigation claims are property of the estate."); *Interstate Fire & Cas. Co. v. Roman Cath. Bishop of Sacramento*, No. 25-2262, 2025 WL 3035792, at *3 (E.D. Cal. Oct. 30, 2025) (finding that appellants were "persons aggrieved' for purposes of bankruptcy appellate standing" where the bankruptcy court order "imminently and detrimentally affect[ed] both their litigation rights and their financial interests"); *Red River Res. Inc. v. Wickford, Inc.*, No. 10-41, 2010 WL 3120037, at *2–3 (E.D. Tex. Aug. 9, 2010) (finding that an intervenor in an adversary proceeding was a "person[] aggrieved" by the bankruptcy court's order, and thus had bankruptcy appellate standing, because the bankruptcy court's order eliminated intervenor's interest in two oil and gas leases); *In re U.S. Enters., Inc.*, No. 05-5783, 2006 WL 3544583, at *4 (D.N.J. Dec. 8, 2006) ("The inability to collect on the two promissory notes 'directly and adversely' affects Appellant pecuniarily by preventing her from pursuing a claim for $1 million."). Therefore, the Trust has standing to pursue this appeal.

Appellees' argument to the contrary misses the mark. Their argument centers on whether the claims at issue in Count III "are . . . the lawful property of the . . . Trust." ECF No. 12-1 at 4. More specifically, Appellees argue that the Trust cannot be "directly affected by the dismissal of the . . . [c]laims in Count III for aiding and abetting" securities fraud under New Jersey law, because those claims "could not [have] be[en] lawfully assigned to the" Trust "in the first place." *Id.* at 5–6. On this point, Appellees argue that the New Jersey securities statute "creates only a private right of action for 'persons who have been defrauded by the sellers of securities,'" and

5

therefore the Trust—as the "successor in interest to the alleged *wrongdoer*"—"holds no such claims." *Id.* at 7 (emphasis added).  The only way the Trust could receive these claims, Appellees argue, is by assignment, which they state is barred by New Jersey law.  *See id.* at 8–11.

This argument improperly conflates the merits of this appeal with the issue of prudential standing to appeal, the latter of which is at issue here.  To determine whether a party has prudential standing to appeal, the district court must determine whether the appellant is sufficiently "aggrieved" by the bankruptcy court's decision.  *Imerys Talc*, 38 F.4th at 372.  The merits of a bankruptcy appeal, on the other hand, require the district court to review the propriety of factual and legal determinations made by the bankruptcy court below.  *Sterten v. Option One Mortg. Corp.*, 479 F. Supp. 2d 479, 482 n.4 (E.D. Pa. 2007), *aff'd sub nom. In re Sterten*, 546 F.3d 278 (3d Cir. 2008).  These inquiries are distinct.  *See, e.g.*, *In re Boy Scouts of Am.*, 35 F.4th 149, 157 (3d Cir. 2022) (finding that an insurer was sufficiently aggrieved to appeal the bankruptcy court's appointment of counsel and *then* affirming bankruptcy court's appointment of counsel as consistent with 11 U.S.C. § 327(a)); *Monarch Med. Pet Servs. LLC v. Lyon Fin. Servs.*, No. 12-277, 2012 WL 3262834, at *3–6 (D.N.J. Aug. 8, 2012) (finding that appellant was sufficiently "aggrieved" by the challenged bankruptcy-court order and *then* concluding that the bankruptcy court "did not abuse [its] discretion in entering" the challenged order); *see also In re 69 N. Franklin Tpk., LLC*, No. 16-2254, 2017 WL 773875, at *3 n.5 (D.N.J. Feb. 28, 2017).

Appellees' prudential standing argument repeats an argument they made to Judge Sherwood below[2] and therefore speaks to the merits of this appeal—not the Trust's prudential

---

[2] As Appellees correctly note, Judge Sherwood did not resolve the issue, because he dismissed Count III on an alternative ground.  *See* ECF No. 20 at 4–5.

standing to appeal.[3]  *See, e.g.*, ECF No. 16 at 4–5 ("[J. Sherwood]: The only thing you brief that I'm aware of is that they can't assign tort claims to a Trust.  [Defendants' Counsel]: Right.  [J. Sherwood]: I'm not sure that's right.  But I'll certainly look at it." (quoting ECF No. 13-4 at 2685));  ECF No. 20 at 4–5.  As such, Appellees' Motion to Dismiss invites the Court to "review[] the merits of [the appeal] multiple times—at the motions stage and at the decision stage"—much like a motion for summary affirmance.  *Semmerling v. Bormann*, 970 F.3d 886, 888 (7th Cir. 2020) (Brennan, J., in chambers).  The Court rejects Appellees' invitation and finds that the Trust has prudential standing to appeal.[4]

### B.    The Amicus Motion

#### 1.  Applicable Law

Federal Rule of Bankruptcy Procedure 8017(a) governs amicus filings during the district court's initial consideration of a bankruptcy appeal on the merits.  Fed. R. Bankr. P. 8017(a); *see Rosenberg v. Educ. Credit Mgmt. Corp.*, 20-688, 2021 WL 4461341, at \*2 (S.D.N.Y. Sept. 29, 2021).  Under Bankruptcy Rule 8017(a), "[t]he United States, its officer or agency, or a state may file an amicus brief without the parties' consent or leave of court"; however, any other party may only file a brief with "leave of court or if . . . all parties have consented to its filing."  Fed. R. Bankr. P. 8017(a)(2).  A motion for leave must be accompanied by "the proposed brief and state . . . [1] the movant's interest . . . and [2] the reason why [the] amicus brief is desirable and

---

[3] Indeed, Appellees appear to recognize this by presenting the argument again here on appeal in their appellee brief.  ECF No. 26 at 4 (listing the issue of whether the claims in Count III properly belong to the Trust in their "statement of issues on appeal" section of their appellate brief), 15 (incorporating by reference their Motion to Dismiss brief in their appellate brief); *see In re Adams*, 151 F.4th 144, 149 (3d Cir. 2025) (explaining that an appellate court "may affirm on any ground supported by the record" (citation omitted)).

[4] Because the Court denies Appellees' Motion to Dismiss, the Court will dismiss as moot the Trust's Strike Motion, ECF No. 24, because that motion relates to the Trust's notice of supplemental authority submitted *in opposition to the Motion to Dismiss*.

[3] why the matters asserted [therein] are relevant to the disposition of the appeal." *Id.* 8017(a)(3); *see also Neonatology Assocs., P.A. v. Comm'r of Internal Revenue*, 293 F.3d 128, 131–34 (3d Cir. 2002).

### 2. Analysis

The Court will grant NJBS's Amicus Motion. Fed. R. Bankr. P. 8017(a)(2). The Court finds that the Bureau's participation would be beneficial given the Bureau's experience litigating under the New Jersey Uniform Securities Law and its "relevant knowledge of this sensitive area of the law that" is critical "to protect[ing] the investing public." ECF No. 11-1 at 2. Moreover, the Court has reviewed the Bureau's proposed brief, ECF No. 40, and finds that it will aid the Court in its evaluation of the merits of this appeal. As provided below, the parties will have the opportunity to respond to the Bureau's brief and the Bureau will have the opportunity to further reply.

### C.    The Sur-Reply Motion and the Sur-Reply Strike Motion

#### 1. Applicable Law

The Federal Rules of Bankruptcy Procedure do not address sur-replies. *See* Fed. R. Bankr. P. 8014 (establishing rules for appellant's brief, appellee's brief, and reply brief). However, Federal Rule of Appellate Procedure 28—from which Bankruptcy Rule 8014 is derived—provides that beyond appellant's brief, appellee's brief, and appellant's reply brief, "no further briefs may be filed" "[u]nless the court permits." Fed. R. App. P. 28 (c); *see* Fed. R. Bankr. P. 8014, Comm. Notes on Rules (2014). Generally, courts of appeals have wide discretion in deciding whether to provide leave to file a sur-reply. *See, e.g., Church v. Missouri*, 913 F.3d 736, 754 n.4 (8th Cir. 2019); *Wolf v. Chesapeake Operating, Inc.*, 72 F.3d 139 n.2 (10th Cir. 1995). This is consistent with the general rule in the district court that "[p]ermission for leave to file a sur[-]reply is a matter 'committed to the [Court's] sound discretion.'" *Derieux v. FedEx Ground Package Sys., Inc.*, No.

21-13645, 2023 WL 349495, at *1 n.1 (D.N.J. Jan. 20, 2023) (quoting *Levey v. Brownstone Inv. Grp., LLC*, 590 F. App'x 132, 137 (3d Cir. 2014)); *see* L. Civ. R. 7.1(d)(6).

### 2. Analysis

The Court will provide Appellees with leave to file a sur-reply (not to exceed five pages). Appellees seek leave to file a sur-reply brief to the Trust's reply brief to correct what they term as "misstatements, half-truths, and newly-raised issues." ECF No. 28 at 3. For instance, Appellees ask for leave to address the Trust's argument "that Appellee never pointed to the limited nature of the" agency of record agreements ("AORs") which governed the relationship between NRIA and Media Effective,[5] and therefore waived any "arguments regarding" the scope of the AORs. *Id.* at 6. Because the Court agrees that Appellees have not had an opportunity to address this and other arguments, Appellees are permitted to file any sur-reply (not to exceed five pages) by July 27, 2026. *See Shan Indus. v. Tyco Int'l (US), Inc.*, No. 04-1018, 2005 WL 8156842, at 8 n.3 (D.N.J. Sept. 12, 2005) (granting motion to file "two-page sur-reply" where defendant raised new argument in a motion to dismiss); *see also Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003) (noting that "the district court properly allowed Worldcom to file a sur-reply brief to respond to Graphnet's [newly-raised] arguments").[6]

### III.    CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 25th day of June 2026;

**ORDERED** that the Appellees' Motion to Dismiss (ECF No. 12) is **DENIED**; and it is further

---

[5] As Judge Sherwood explained, "NRIA and Media Effective were parties to an [AOR], an agreement between the ad agency (Media Effective) and the advertiser-client (NRIA) which define[d] the agency's role." *Nat'l Realty*, 2024 WL 4481067, at *8.

[6] Having granted Appellees' request to file a sur-reply brief, the Court will deny the Trust's motion to strike the Sur-Reply Motion.

**ORDERED** that the Trust's Motion to Strike (ECF No. 24) is **DENIED AS MOOT**; and it is further

**ORDERED** that NJBS's Amicus Motion (ECF Nos. 11, 40) is **GRANTED**. The parties shall file any responses to NJBS's Amicus Brief (ECF No. 40) by July 27, 2026. NJBS shall file any reply to the parties' responses by August 10, 2026; and it is further

**ORDERED** that Appellees' Sur-Reply Motion (ECF No. 28) is **GRANTED**. Appellees shall file any sur-reply (not to exceed five pages) to the Trust's reply brief by July 27, 2026; and it is further

**ORDERED** that the Trust's Sur-Reply Strike Motion (ECF No. 29) is **DENIED**; and it is finally

**ORDERED** that this action is **ADMINISTRATIVELY TERMINATED** pending submission of the aforementioned briefing and further Order of the Court.

**SO ORDERED**.

_/s/ Claire C. Cecchi_
**CLAIRE C. CECCHI, U.S.D.J.**